FILE BY FAX

1    LAW OFFICE OF MATTHEW B. PAVONE
2    Matthew B. Pavone, Esq. (SBN 95964)
     Courtyard Square
3    750 Grant Avenue
     Suite 250
4    Novato, CA 94945-7003
     Telephone: (415) 209-9610
5    Facsimile: (415) 892-0337

6    Attorneys for Plaintiff
7    KEVIN C. MCMUNIGAL

8               UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11    KEVIN C. MCMUNIGAL,           ) CASE NO. CV 10 2765
                             )
12          Plaintiff,          ) COMPLAINT FOR:
                             ) DECLARATORY JUDGMENT-COPYRIGHT;
13                        ) PARTITION; DECLARATORY
     vs.                  ) JUDGMENT-CONTRACT; BREACH OF
14                        ) CONTRACT-SPECIFIC PERFORMANCE AND
                             ) DAMAGES; PROMISSORY ESTOPPEL;
15    KATE E. BLOCH,             ) ESTOPPEL BY ACQUIESCENSE
                             )
16          Defendant.         )
17    ————————————————————————— ) Judge:

18

19

20       Plaintiff Kevin C. McMunigal, by and through his attorney,

21    Matthew B. Pavone, for his Complaint against Defendant Kate E.

22    Bloch states and alleges as follows:

23

24                     **INTRODUCTION**

25       This action arises from Defendant Bloch's breaches of two

26    separate contracts: (1) a publication agreement with Plaintiff

27    McMunigal and Aspen Publishers, Inc. ("Aspen") to create a legal

28    casebook and (2) an agreement with Plaintiff McMunigal subsequent

COMPLAINT                      1                    Case No.

to publication of the casebook to separate as authors and divide the casebook's materials (the "Separation Agreement"; Exhibit 1 hereto). Plaintiff and Aspen have made extensive efforts to find a way for Plaintiff and Defendant to part ways as authors, preserve the value of the materials each created, and avoid litigation. Defendant's last minute repudiation of and attempt to renegotiate the Separation Agreement, a primary purpose of which was to avoid litigation regarding Defendant's breaches of contract, now requires Plaintiff to seek an order from this Court clarifying  and enforcing his legal and equitable  rights and remedies.

### JURISDICTION AND VENUE

1.   Jurisdiction in this matter is founded upon both 28 USC § 1332, because Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds seventy five thousand dollars ($75,000) exclusive of costs, interest and attorneys fees, and 28 USC § 1331, because it raises federal questions under the Copyright Act of 1976 as Amended, 17 USC § 101 *et seq.* of copyright ownership with supplemental jurisdiction for state and common law claims pursuant to 28 U.S.C. § 1367.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a)(1) and (b)(1)since Defendant resides in the Northern District of California.

**THE PARTIES**

3. Plaintiff Kevin C. McMunigal is the Judge Ben C. Green Professor of Law at Case Western Reserve University School of Law, 11075 East Boulevard, Cleveland, Ohio.  Plaintiff is and was at all times relevant to this action a citizen of the State of Ohio.

4. Defendant Kate E. Bloch is Professor of Law at the Hastings College of the Law, 200 McAllister Street, San Francisco, California. Defendant, upon information and belief, is and was at all times relevant to this action a citizen of the State of California.

**FACTUAL BACKGROUND**

**The Casebook**

5. In 1999, Plaintiff and Defendant agreed to create a criminal law casebook and submitted a proposal for that casebook to Aspen.

6. On or about April 4, 2000, Plaintiff and Defendant entered a publication agreement with Aspen (the "Aspen Agreement"; Exhibit 2 hereto) to publish a casebook entitled *Criminal Law: A Contemporary Approach* (the "Casebook") and an accompanying teacher's manual.

7. Pursuant to the Aspen Agreement, the Casebook manuscript was due to be submitted on August 15, 2003.

COMPLAINT                              3                        Case No.

8. Aspen scheduled publication of the Casebook for March 1, 2004, in time to sell the Casebook for use during the 2004-2005 academic year.

9. Plaintiff and Defendant divided responsibility for creating various parts of the Casebook.

10. Plaintiff independently selected and edited cases, statutes, jury instructions, and scholarly excerpts and wrote original text, problems, and questions for his parts of the Casebook. Plaintiff's parts of the Casebook are listed in the Separation Agreement under "Part Three:  McMunigal Sole Copyright Materials."

11. Defendant likewise independently selected and edited cases, statutes, jury instructions, and scholarly excerpts and wrote original text, problems, and questions for her parts of the Casebook. Defendant's parts of the Casebook are listed in the Separation Agreement under "Part Two: Bloch Sole Copyright Materials."

12. Aspen collected and edited Plaintiff's and Defendant's parts and published them as the Casebook.

13. Defendant's delays and other breaches of the Aspen Agreement, described in the following Paragraphs, forced Aspen to delay publication of the Casebook until April 29, 2005, over a year after the originally scheduled publication date.

14. On January 11, 2004, partway through the copyediting process, Defendant stopped the copyediting on the Casebook for a period of eight months.

15. For many months following January 11, 2004, Defendant refused to commit to a time frame for resuming copyediting work on the Casebook.

16. Copyediting on the Casebook did not resume until September 7, 2004.

17. During 2004 and 2005, Defendant frequently failed to inform Plaintiff and Aspen when she would finish and submit her work for the Casebook to Aspen.

18. During 2004 and 2005, Defendant frequently failed to submit her work for the Casebook to Aspen in timely fashion.

19. Paragraph 3 of the Aspen Agreement requires Plaintiff and Defendant to obtain permissions for copyrighted items selected for use in the Casebook.

20. Defendant failed to obtain necessary copyright permissions for items she had selected for her parts of the Casebook, forcing Aspen to take over this task in December of 2004.

21. At the time of publication, Aspen held sole copyright to the materials collected in the Casebook, as required by the Aspen Agreement.

### The Teacher's Manuals

22. A teacher's manual published in timely fashion is critical to the success of a casebook. Accordingly, the Aspen Agreement required Plaintiff and Defendant to write a teacher's manual for the Casebook and to submit the teacher's manual manuscript by January 1, 2004.

23. Aspen scheduled the teacher's manual to be published at the same time as the Casebook, on or about March 1, 2004, to be available for prospective adopters of the Casebook to review and for Aspen's sales staff to use in promoting sales of the Casebook.

24. Customary practice in legal publishing is for multiple casebook authors to produce a single teacher's manual for a casebook. It is also customary practice in legal publishing for a casebook's authors to divide the writing of a single teacher's manual, with each author writing the parts of the teacher's manual that correspond to that author's parts of the casebook.

25. The Aspen Agreement contemplated the customary practice of Plaintiff and Defendant writing a single teacher's manual for the casebook and dividing the work so that Plaintiff and Defendant would each write the parts of a single teacher's manual that corresponded to their parts of the Casebook.

26. To avoid delay and redundancy, Aspen and Plaintiff proposed that Plaintiff and Defendant follow the customary practice of dividing the writing of a single teacher's manual

between them, with Plaintiff and Defendant each writing the parts of the teacher's manual corresponding to their parts of the Casebook.

27.  In the Spring of 2005, after the Casebook was published, Defendant informed Plaintiff and Aspen that she would not follow the customary practice of dividing the writing of a single teacher's manual between herself and Plaintiff, instead insisting she write her own separate teacher's manual for the entire Casebook.

28.  During the Summer and Fall of 2005, Defendant failed to inform Aspen and Plaintiff when she would finish and submit her teacher's manual chapters to Aspen.

29.  During the writing of the teacher's manuals and at all times since the Summer of 2005, Defendant has refused to speak with Plaintiff either on the telephone or in person.

30.  Aspen collected Plaintiff's and Defendant's teacher's manuals and published them in a single volume, with Plaintiff's teacher's manual labeled "Part I" and Defendant's teacher's manual labeled "Part II."

31.  Defendant's delays and other contractual breaches, described in the previous Paragraphs, forced Aspen to delay publication of the teacher's manuals until March of 2006, almost a year after the Casebook was published and nearly two years after the originally scheduled publication date for the teacher's manual.

32. Defendant's insistence on Defendant and Plaintiff writing separate teacher's manuals caused the published teacher's manuals to be unavailable in 2005 to potential adopters of the Casebook and unavailable for Aspen's sales staff to use in marketing the Casebook for the 2005-2006 academic year, damaging sales of the Casebook.

33. Defendant's insistence on Defendant and Plaintiff writing separate teacher's manuals also caused the published teacher's manuals to be unavailable for use by teachers who adopted the book for courses during the 2005-2006 academic year, damaging sales of the Casebook.

34. As a result of Defendant's delays and other breaches of the Aspen Agreement regarding the Casebook and the teacher's manuals, Aspen decided not to publish a revised edition of the Casebook and advised Plaintiff and Defendant of this decision by letter of July 8, 2008.  (Exhibit 3 hereto.)

35. Plaintiff holds sole copyright to the teacher's manual he wrote.

36. Defendant Bloch holds sole copyright to the teacher's manual she wrote.

### The Separation Agreement

37.  After the delayed publication of the teacher's manuals in March of 2006, Plaintiff, Aspen, and Defendant began discussions of Plaintiff and Defendant separating as authors and

dividing the materials collected in the Casebook between them according to authorship.

38. To accomplish this separation and division, and to settle claims based on Defendant's contractual breaches, Plaintiff and Defendant exchanged contract offers, counter-offers, and acceptances from May through November of 2007.

39. On August 6, 2007, for example, Defendant sent Plaintiff a counter-offer in which she stated "Thank you for organizing the remaining issues so that we can move forward in the book division process. . . . " and "I agree with the concept of having the rights to our exclusive materials revert to each of us solely and separately and to finding a way of sharing the rights to the shared materials."

40. On November 13, 2007, Plaintiff and Defendant reached final agreement to separate as authors, to divide the Casebook, and to recognize that each holds sole copyright to their respective parts of the Casebook when Plaintiff agreed to all remaining conditions set forth in Defendant's prior counteroffer and accepted that counteroffer.

41. During the exchange described in Paragraph 38, above, Plaintiff and Defendant jointly created the Separation Agreement and Defendant extensively revised and added to the Separation Agreement's terms and language.

42. The essential terms of the Separation Agreement are that Plaintiff and Defendant agree:  (1) to separate as authors; (2)

to divide the Casebook's materials according to authorship; (3) that Defendant holds sole copyright to her parts of the Casebook, listed in Part Two of the Separation Agreement; (4) that Plaintiff holds sole copyright to his parts of the Casebook, listed in Part Three of the Separation Agreement; and (5) that Plaintiff and Defendant hold joint copyright to the parts of the Casebook they created together, listed in Part One of the Separation Agreement.

### Defendant Bloch's Repudiation of the Separation Agreement

43. On November 9, 2007, Aspen offered Defendant and Plaintiff each new contracts for new and separate criminal law casebooks based on each author's parts of the Casebook.

44. The offers were conditioned on (1) Plaintiff and Defendant finalizing their agreement to separate as authors and to divide the Casebook's materials by November 30, 2007 and (2) Plaintiff and Defendant submitting separate new book proposals to Aspen. Aspen set a November 15, 2007 deadline for Plaintiff to submit a new book proposal and a November 19, 2007 deadline for Defendant to submit a new book proposal.

45. On November 12, 2007, Plaintiff submitted a book proposal to Aspen for a new criminal law casebook in response to Aspen's November 9, 2007 offer.

46. After reviewing Plaintiff's proposal, Aspen agreed to publish a new criminal law casebook by Plaintiff conditioned on

1    Defendant and he executing a formal memorialization of the

2    Separation Agreement.

3        47. Based on information and belief, Defendant did not

4    submit a book proposal to Aspen for a new criminal law casebook

5    by the November 19, 2007 deadline set by Aspen or at any time

6    thereafter.

7

8        48. On November 23, 2007, Defendant, in an email sent to

9    Plaintiff and Aspen, expressly repudiated the Separation

10   Agreement.

11       49. Since November 23, 2007, Defendant has refused to

12   execute a formal memorialization of the Separation Agreement.

13       50. Due to Defendant's repudiation and continuing breach of

14   the Separation Agreement, Aspen is currently unwilling to publish

15   a new criminal law casebook by Plaintiff.

16

17                            **COUNT I**

18               **DECLARATORY JUDGMENT - COPYRIGHT**

19

20       51.  Plaintiff McMunigal incorporates by reference paragraphs 1

21   through 50, above.

22       52.  By letter of July 8, 2008, Aspen notified Plaintiff and

23   Defendant that it was transferring to Plaintiff and to Defendant

24   the copyright to the Casebook's materials for future editions.

25       53. Plaintiff and Defendant jointly created items comprising

26   approximately 3 pages of the 998 pages in the Casebook. In Part

27   One of the Separation Agreement Plaintiff and Defendant listed

28   these items and acknowledged their joint creation.

54. Plaintiff claims that Plaintiff and Defendant hold joint copyright to the items they listed in Part One of the Separation Agreement, as acknowledged by Defendant in creating the Separation Agreement.

55. Defendant independently selected, edited and wrote substantial parts of the Casebook. In Part Two of the Separation Agreement, Plaintiff and Defendant listed her parts of the Casebook and acknowledged Defendant's independent selection, editing and writing of them and her entitlement to sole copyright to them.

56. Plaintiff claims that Defendant holds sole copyright to her parts of the Casebook listed in Part Two of the Separation Agreement, as Defendant acknowledged in creating the Separation Agreement but now denies.

57. Plaintiff independently selected, edited and wrote substantial parts of the Casebook. In Part Three of the Separation Agreement, Plaintiff and Defendant listed his parts of the Casebook and acknowledged Plaintiff's independent selection, editing and writing of them and his entitlement to sole copyright to them.

58. Plaintiff registered sole copyright to his parts of the Casebook, listed in Part Three of the Separation Agreement, and the United States Copyright Office issued a Certificate of Registration, Number TX 6-935-559 (Exhibit 4 hereto), to him as sole author and claimant of the copyright to his parts of the Casebook.

59. Plaintiff claims that he holds sole copyright to his parts of the Casebook listed in Part Three of the Separation

1   Agreement, as Defendant acknowledged in creating the Separation

2   Agreement but now denies.

3       60. Whether the Casebook is a collective work, and the

4   status of and ownership of the copyright to the materials in the

5   Casebook upon Aspen's   July 8, 2008 transfer of the copyright to

6   Plaintiff and to Defendant, constitute justiciable federal

7   questions under copyright law.

8       61. Plaintiff claims that the Casebook is a collective work,

9   apart from the three pages described in Part One of the

10  Separation Agreement.

11      62. Plaintiff is now unable to enter a contract for future

12  publication of his parts of the Casebook without declaratory

13  clarification by this Court that he holds sole copyright to his

14  parts of the Casebook.

15      63.  Pursuant to 28 U.S.C. Section 2201, Plaintiff

16  respectfully asks this Court to declare the rights and legal

17  obligations of the parties with respect to copyright to the

18  materials collected in the Casebook.

19      WHEREFORE, Plaintiff respectfully requests that this Court

20  enter a judgment declaring that Plaintiff holds sole copyright to

21  the materials to which he has registered the copyright and that

22  are listed in Part Three of the Separation Agreement, that

23  Defendant holds sole copyright to the materials listed in Part

24  Two of the Separation Agreement, and that Plaintiff and Defendant

25  hold joint copyright to the materials listed in Part One of the

26  Separation Agreement.

27

28

## COUNT II

### PARTITION

64. Plaintiff incorporates by reference Paragraphs 1 through 63, above.

65. If the Court finds under Count I, above, that the Casebook is a joint work rather than a collective work, and that therefore Plaintiff and Defendant hold joint copyright to all of Casebooks materials, Plaintiff seeks partition of that joint copyright pursuant to California Code of Civil Procedure § 872.210.

66. The subject of this partition action is the copyright to the materials in the Casebook.

67. Plaintiff is a co-owner as tenant in common of the copyright to the materials in the Casebook.

68. Defendant Bloch is a co-owner as tenant in common of the copyright to the materials in the Casebook.

69. Plaintiff and Defendant are the only owners of the copyright to the materials collected in the Casebook.

70. Plaintiff seeks equitable partition of the copyright to the materials collected in the Casebook between Plaintiff and Defendant granting Plaintiff sole copyright to his parts of the Casebook, listed in Part Three of the Separation Agreement, and granting Defendant sole copyright to her parts of the Casebook listed in Part Two of the Separation Agreement.

71. Plaintiff requests that the partition sought herein be accomplished by this Court entering an order directing Defendant Bloch to execute a memorialization of the Separation Agreement.

## COUNT III
### DECLARATORY JUDGMENT- SEPARATION AGREEEMENT

72. Plaintiff incorporates by reference Paragraphs 1 through 71, above.

73. Plaintiff and Defendant entered the Separation Agreement as described in Paragraphs 37 through 42.

74. The Separation Agreement constitutes a valid contract concerning the separation of Plaintiff and Defendant as authors and division of the copyright to the materials in the Casebook.

75. All offers, counteroffers, and acceptances by Plaintiff and Defendant creating and constituting the Separation Agreement are in writing since they took place through emails and documents attached to emails.

76. If the Court finds under Count I, above, that the Casebook is a joint work rather than a collective work, and that therefore Plaintiff and Defendant hold joint copyright to all of the Casebook's materials, then by and through the Separation Agreement Plaintiff and Defendant agreed to transfer and did transfer their ownership interests to each other as reflected in Part Two and Part Three of the Separation Agreement.

77. Pursuant to Rule 65 and 28 USC § 2201, Plaintiff asks this Court to declare that there exists an enforceable division

of the copyright to the Casebook's materials by contract between Plaintiff and Defendant and that the copyright to the Casebook's materials have been divided as set forth in the Separation Agreement.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment declaring (1) that the Separation Agreement is a valid and legally enforceable contract between Plaintiff and Defendant obligating Defendant to separate from Plaintiff as an author and to divide the materials in the Casebook according to the terms of the Separation Agreement; and (2) that under the terms of the Separation Agreement Plaintiff holds sole copyright to the materials listed in Part Three of the Separation Agreement, that Defendant holds sole copyright to the materials listed in Part Two of the  Separation Agreement, and that Plaintiff and Defendant hold joint copyright to the materials listed in Part One of the Separation Agreement.

### COUNT IV

### SPECIFIC PERFORMANCE OF SEPARATION AGREEMENT

78. Plaintiff incorporates by reference Paragraphs 1 through 77, above.

79. The Separation Agreement is fair to both Plaintiff and Defendant, and the consideration clearly sufficient in that the Separation Agreement gives each party (a) sole copyright to the substantial parts of the Casebook each independently created, (b)

joint copyright to the approximately 3 pages of materials they jointly created, (c) sole copyright to approximately equal parts of the Casebook and (d) the opportunity to preserve the value of the substantial materials each independently created by publishing them in separate future works.

80. Failure to enforce the Separation Agreement would be unfair to Plaintiff since it was Defendant Bloch's delays and other contractual breaches that caused the parties to separate as authors and divide the Casebook's materials.

81. Failure to enforce the Separation Agreement would be unfair to Plaintiff since it was Defendant Bloch's delays and other contractual breaches, as well as her last minute repudiation of the Separation Agreement, that cost both parties the opportunities to publish new separate Casebooks with Aspen.

82. Failure to enforce the Separation Agreement would be unfair to Plaintiff since it would allow Defendant to hold Plaintiff and his parts of the Casebook hostage by threatening the future value of the approximately 500 pages of materials Plaintiff spent several years creating as well as the future value of Plaintiff's teacher's manual.

83. Performance by Defendant of the terms of the Separation Agreement is neither oppressive nor unconscionable since she played a substantial role in creating the Separation Agreement.

84. The terms of the Separation Agreement are certain and unambiguous.

85. Plaintiff has performed all obligations of the Separation Agreement required of him thus far and Plaintiff remains ready and willing to perform his obligations under the Separation Agreement and to execute a formal memorialization of it.

86. The Separation Agreement is capable of enforcement without further supervision by the Court through a decree of this Court ordering Defendant to execute a formal memorialization of the Separation Agreement.

87. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant granting specific enforcement of the Separation Agreement and ordering Defendant to execute a formal memorialization of the Separation Agreement.

### COUNT V

#### PROMISSORY ESTOPPEL

88. Plaintiff incorporates by reference Paragraphs 1 through 87, above.

89. During negotiation of the Separation Agreement, Defendant promised to separate from Plaintiff as an author and divide the Casebook's materials between Plaintiff and Defendant.

90. Defendant's promise and other actions led Plaintiff reasonably to believe that Defendant would separate from Plaintiff as an author and divide the Casebook's materials between Plaintiff and Defendant.

91. Defendant's promise and other actions led Plaintiff and Aspen reasonably to believe, as Aspen stated in a November 2, 2007 email to Plaintiff and Defendant, that "the two of you will not be working together on a second edition of your criminal law casebook."

92. Defendant knew that Aspen had offered Plaintiff a contract for a new casebook and that this offer was conditioned on Plaintiff submitting a new book proposal to Aspen by November 15, 2007.

93. In reasonable reliance on Defendant's promise and other actions, Plaintiff recruited another law professor to work with him on a new criminal casebook and wrote a detailed proposal for that new criminal law casebook.

94. In reasonable reliance on Defendant's promise and other actions, on November 12, 2007, three days prior to Aspen's November 15, 2007 deadline, Plaintiff submitted a proposal for a new casebook to Aspen.

95. After reviewing Plaintiff's new casebook proposal, Aspen agreed to publish a new casebook by Plaintiff on condition that Defendant and he execute a formal memorialization of the Separation Agreement.

96. Defendant should reasonably have expected her promise and other actions to induce Plaintiff's reliance on her promise as described in Paragraphs 93 and 94.

97. Plaintiff and Defendant have already lost the opportunity to publish future editions of the Casebook with Aspen due to Defendant's delays and other contractual breaches.

98. Plaintiff and Defendant have already lost the opportunities to accept Aspen's November 9, 2007 offers to publish new separate criminal law casebooks with Aspen due to Defendant's failure to honor her promise to separate from Plaintiff as an author and divide the Casebook's materials between Plaintiff and Defendant.

99. Defendant must be estopped by this Court from failing to honor her promise to separate from Plaintiff as an author and divide the Casebook's materials between Plaintiff and Defendant in order to avoid the further injustice of Plaintiff losing all future opportunity to publish and earn royalties on the approximately 500 pages of materials he spent several years independently selecting, editing, and writing, and the teacher's manual he wrote.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant estopping her from failing to fulfill her promise to separate from Plaintiff as an author and divide the Casebook's materials between Plaintiff and Defendant as described in the Separation Agreement.

## COUNT VI

### ESTOPPEL BY ACQUIESCENCE

100. Plaintiff incorporates by reference Paragraphs 1 through 99, above.

101. Between May of 2007 and November 12, 2007, Defendant made numerous statements and engaged in numerous acts indicating

to both Plaintiff and Aspen that Plaintiff and Defendant would not be working together on a second edition of the Casebook, but would instead separate as authors and divide the Casebook's materials.

102.   On September 19, 2007, for example, Defendant stated in an email to Plaintiff and to Aspen "I hope to return to the book division proposal in two to three weeks."

103. On November 2, 2007, Aspen stated to Defendant and Plaintiff in an email that, following phone conversations with both Defendant and Plaintiff, "it is clear that the two of you will not be working together on a second edition of your criminal law casebook."

104. Prior to November 12, 2007, Defendant made no statement to Plaintiff and took no action contrary to her statements and acts that led Plaintiff and Aspen to conclude that Defendant and Plaintiff "will not be working together on a second edition of your criminal law casebook," and thus Defendant acquiesced to the statement's accuracy.

105. Defendant's failure to deny in timely fashion the accuracy of the statement in Aspen's November 2, 2007 email served as an adoption by Defendant of the statement's accuracy.

106. Defendant's acquiescence, silence, and other actions led Plaintiff reasonably to believe that Defendant would separate from him as an author and divide the Casebook's materials between Plaintiff and Defendant.

107. Defendant knew that Aspen had offered Plaintiff a contract for a new casebook and that this offer was conditioned on Plaintiff submitting a new book proposal to Aspen by November 15, 2007.

108. In reasonable reliance on Defendant's acquiescence, silence, and other actions, on November 12, 2007, three days prior to Aspen's November 15, 2007 deadline, Plaintiff submitted a proposal for a new casebook to Aspen.

109. After reviewing Plaintiff's new casebook proposal, Aspen agreed to publish a new casebook by Plaintiff on condition that Defendant and he execute a formal memorialization of the Separation Agreement.

110. On November 23, 2007, Defendant reversed her position and since that date has demanded that Plaintiff work together with Defendant on a second edition of the Casebook.

111. Defendant should reasonably have expected her acquiescence, silence, and actions to induce Plaintiff's reliance on her statements and acts that led Plainitff and Aspen to conclude that Defendant and Plaintiff "will not be working together on a second edition of your criminal law casebook."

112. Defendant's November 23, 2007 change of position caused Plaintiff and Defendant to lose the opportunities to accept Aspen's November 9, 2007 offers to publish new separate criminal law casebooks with Aspen.

113. Defendant must be estopped by this Court from changing her position and failing to separate from Plaintiff as an author and divide the Casebook's materials between Plaintiff and Defendant in order to avoid the further injustice of Plaintiff losing all future opportunity to publish and earn royalties on the approximately 500 pages of materials he spent several years independently selecting, editing, and writing and the teacher's manual be wrote.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant estopping her from changing her position and failing to separate from Plaintiff as an author and divide the Casebook's materials between Plaintiff and Defendant as described in the Separation Agreement.

<u>**COUNT VII**</u>

**BREACH OF THE ASPEN AGREEMENT – DAMAGES**

114. Plaintiff incorporates by reference Paragraphs 1 through 113, above.

115. Plaintiff is either a direct beneficiary or a third-party beneficiary of the Aspen Agreement as it applied to Defendant.

116. Defendant materially breached the Aspen Agreement in regard to publication of the Casebook as set forth in Paragraphs 5 through 21, above, and in regard to publication of the teacher's manuals as set forth in Paragraphs 22 through 36, above.

117. Plaintiff demanded that Defendant fulfill her obligations under the Aspen Agreement but Defendant Bloch failed and refused to do so.

118. Plaintiff duly performed all terms and conditions of the Aspen Agreement.

119. Aspen duly performed all terms and conditions of the Aspen Agreement.

120. Defendant's delays and other breaches of the Aspen Agreement caused publication of the Casebook to be delayed for over a year and Plaintiff thereby lost the opportunity to earn royalties from sales of the Casebook during the 2004-2005 academic year.

121. Defendant's delays and other contractual breaches concerning the teacher's manual caused the published version of the teacher's manuals to be delayed for nearly two years and, thus, unavailable in 2005 to potential adopters of the Casebook in making their decision whether to adopt the Casebook, unavailable for Aspen's sales staff to use in marketing the Casebook for the 2005-2006 academic year, and unavailable for use by teachers who adopted the Casebook during the 2005-2006 academic year, thereby damaging marketing and sales of the Casebook and reducing the royalties earned by Plaintiff from sales of the Casebook.

122. Defendant's delays and other breaches of the Aspen Agreement caused Aspen to decide not to publish future revised

editions of the Casebook and consequently Plaintiff has lost the opportunity to earn royalties on future revised editions of the Casebook.

WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant for her breaches of the Aspen Agreement and granting him damages in an amount in excess of $75,000, for interest from the time of judgment, costs, and for such further relief as this Court deems just.

### COUNT VIII

**BREACH OF SEPARATION AGREEMENT - DAMAGES**

123. Plaintiff McMunigal incorporates by reference Paragraphs 1 through 122, above.

124. As a result of Defendant's repudiation and breach of the Separation Agreement, Aspen will not contract with Plaintiff McMunigal to publish a new criminal law casebook using the materials described in Part Three of the Separation Agreement.

125. As a result of Defendant's repudiation of the Separation Agreement, Plaintiff has lost the opportunity to earn future royalties through publication of a new casebook with Aspen in an amount in excess of $75,000 over the life of such a new casebook and future revised editions.

WHEREFORE, Plaintiff respectfully requests judgment in his favor against Defendant for her breaches of the Separation Agreement granting damages in an amount in excess of $75,000, for interest from the time of judgment, costs, and for such further relief as this Court deems just.

**PRAYER**

WHEREFORE Plaintiff requests that this Court grant judgment on his behalf against Defendant as follows:

Count I-- Declare that Plaintiff holds sole copyright to the materials described in Part Three of the Separation Agreement.

Count II -- Partition the Casebook's copyright between Plaintiff and Defendant by ordering Defendant to execute the Separation Agreement.

Count III--Declare that the Separation Agreement is a legally enforceable contract and that Plaintiff holds sole copyright to the materials described in Part Three of the Separation Agreement.

Count IV--Order Defendant specifically to perform under the Separation Agreement.

Count V—Find that Defendant is promissorily estopped from failing to honor the Separation Agreement.

Count VI-Find that Defendant is estopped by her acquiescence, silence, and other actions from failing to honor the Separation Agreement.

Count VII—Award money damages to Plaintiff in an amount in excess of $75,000 to be determined at trial for losses sustained by Plaintiff due to Defendant's breach of the Aspen Agreement, plus interest, costs, and such other and further relief as may be just.

Count VIII— Award money damages to Plaintiff in an amount in excess of $75,000 to be determined at trial for the losses sustained by Plaintiff due to Defendant's breach of the Separation Agreement, plus interest, costs, and such other and further relief as may be just.

**AND** Plaintiff requests that the court order Defendant to pay the costs incurred in prosecuting all these Counts and attorney fees incurred in prosecuting Count I.

DATED: June _18_, 2010     LAW OFFICE OF MATTHEW B. PAVONE

By: _Matthew B. Pavone_
Matthew B. Pavone
Attorney for Plaintiff
KEVIN C. MCMUNIGAL